UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC-SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: 9/19/14              │
└─────────────────────────────────┘
```

ALLIANZ GLOBAL CORPORATE &
SPECIALTY, as subrogee and assignee of
SOUTHERN TELECOM INC.,

             Plaintiff,

      -against-

"CHISWICK BRIDGE," her engines, tackle,
boilers, etc., *in rem*; KAWASAKI KISEN
KAISHA CO. LTD.; "K" LINE AMERICA,
INC.; PORT NEWARK CONTAINER
TERMINAL; PORTS AMERICA; TRANS
GLOBAL LOGISTICS; HUA FENG (USA)
LOGISTICS INC.,

             Defendants.

No. 13-cv-7559-RA

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Allianz Global Corporate & Specialty ("Allianz") brings this admiralty case as the subrogee and assignee of Southern Telecom Inc., seeking recovery for electronic accessories shipped from China to New York and allegedly damaged by flooding from Hurricane Sandy.[1] Before the Court is a motion to dismiss by Defendant Trans Global Logistics LLC ("Trans Global") on the basis of an exclusive forum selection clause in the bills of lading that Trans Global's affiliate issued for the insured shipment. For the reasons stated below, the motion to dismiss is granted.

## BACKGROUND

    Allianz's claims arise out of a shipment of internet tablets and tablet cases shipped to New York on the "CHISWICK BRIDGE" ocean carrier and discharged at the Port Newark

---

[1] This case is one of fifteen cases consolidated for all purposes under docket 13-cv-7004-RA. (Dkt. 39.)

Container Terminal in New Jersey on or about October 27, 2012—two days before Hurricane Sandy struck New Jersey. (Compl. ¶¶ 10-12.)

Allianz alleges that the shipment was damaged by "wetness" from the hurricane as a result of the negligence of Trans Global, Kawasaki Kisen Kaisha Co. Ltd. and "K" Line America, Inc., Port Newark Container Terminal, Ports America, Hua Feng (USA) Logistics Inc., and the "CHISWICK BRIDGE," her engines, tackle, boilers, etc., *in rem*. (Id. ¶ 13.) Defendants, Allianz claims, knew or should have known about the "well predicted and highly publicized impact" of the hurricane, including expected storm surges, rising water levels, heavy wind, and rain. (Id. ¶¶ 14-15, 17.) In addition, because Defendants allegedly agreed to perform services and act as a carrier or bailee of the shipment, Allianz seeks to hold them liable for the breach of that agreement and of their obligations as carriers of goods for hire and/or bailees "under applicable contracts or law." (Id. ¶ 24.)

Allianz sues Trans Global for its handling of the shipment. According to the Complaint, Trans Global and co-Defendant Hua Feng (USA) Logistics Inc. failed to exercise "proper care, custody, and control of the subject cargo," involving but not limited to the selection of carrier, coordination and scheduling of pickup and delivery, and management of subject cargo. (Id. ¶ 16.) Trans Global purportedly acted as an agent and subcontractor for its affiliate, TGL Container Lines, the non-vessel operating common carrier for the shipment. (Trans Global Memorandum in Support of Motion to Dismiss ("Def. Mem.") at 1; Wang Declaration (Wang Decl.) ¶ 5.)

TGL Container Lines issued two house bills of lading ("TGL Bills of Lading") for the shipment, numbered SZX210001NYC and SZX210002NYC. (Wang Declaration ¶ 5; Plaintiff's Opposition to Trans Global's Motion to Dismiss ("Pl. Opp.") at 1.) The TGL Bills of Lading identify Allianz's insured, Southern Telecom, as the consignee for the shipment. (Wang Decl.

Ex. A.)  The terms and conditions on the reverse side of the bills include a forum selection clause and a choice of law clause.  (Id.)  The forum selection clause provides:

> Any dispute arising out of or in connection with the contract contained in or evidenced by the transportation agreement shall be referred to the exclusive jurisdiction of the Hong Kong Courts. Save as aforesaid the Merchant shall not commence any action or legal proceedings (including but not limited to proceedings commenced for the purpose of obtaining security in respect of any claim).

(Id.)  The accompanying choice of law clause provides that Hong Kong law governs the contract of carriage.  (Id.)

On October 25, 2013, Allianz filed the Complaint in this case.  (Dkt. 1.)  Trans Global answered on December 30, 2013 and asserted an affirmative defense based on the forum selection clause in the TGL Bills of Lading.  (Dkt. 10.)  On February 11, 2014, Trans Global filed the instant motion to dismiss, arguing that the forum selection clause mandates that any claim against Trans Global be brought in Hong Kong.  (Dkt. 29.)

## LEGAL STANDARD

Until last year, it was unclear what the proper procedural mechanism was for filing a motion to enforce a forum selection clause.  The Supreme Court resolved this uncertainty in Atlantic Marine Constr. Co. v. United States District Court for the Western District of Texas, holding that a party seeking to enforce a forum selection clause designating a foreign forum should do so by way of a motion to dismiss for *forum non conveniens*.  134 S. Ct. 568, 580 (Dec. 3, 2013).[2]  The Court will thus construe Trans Global's motion as one to dismiss the Complaint based on the doctrine of *forum non conveniens*.  In deciding the motion, the Court may rely on the pleadings and affidavits submitted in connection with the motion, but cannot resolve any

---

[2] The Atlantic Marine decision left open the question of whether such a motion may alternatively be brought under Fed. R. Civ. P. 12(b)(6).  134 S. Ct. at 580.

disputed material fact in the movant's favor unless an evidentiary hearing is granted.  Martinez v. Bloomberg LP, 740 F.3d 211, 216-17 (2d Cir. 2014); see also Midamines SPRL Ltd. v. KBC Bank NV, No. 12 Civ. 8089 (RJS), 2014 WL 1116875, at *2, n. 5 (S.D.N.Y. Mar. 18, 2014).

The enforceability of the forum selection clause is governed by federal law.  Martinez, 740 F.3d at 217; Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590 (1991).  Under the doctrine of *forum non conveniens*, a valid forum selection clause must be given "controlling weight in all but the most exceptional cases."  Atlantic Marine, 134 S. Ct. at 581.  In the admiralty context, forum selection clauses "are prima facie valid and should be enforced" unless the resisting party meets the "heavy burden" of showing that enforcement would be unreasonable under the circumstances.  M/S Breman v. Zapata Off-Shore Co., 407 U.S. 1, 10, 17 (1972).

Courts in this Circuit employ a four-part analysis to determine the validity of a forum selection clause.  Phillips v. Audio Active, Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007).  First, the Court must determine: (1) whether the clause was "reasonably communicated" to the party resisting enforcement, (2) whether the clause is mandatory or permissive, and (3) whether the claims and parties involved in the suit are subject to the clause.  Id. at 383.[3]  If these three requirements are met, the forum selection clause is presumptively enforceable.  Id. (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1362-63 (2d Cir. 1993)).  The final step of the analysis is for the Court to ascertain whether the resisting party has rebutted the presumption of enforceability by showing that enforcement of the forum selection clause would be unreasonable or unjust, or

---

[3] In a contract containing both a forum selection clause and a choice of law provision, the law of the forum designated in the choice of law provision typically governs interpretive questions about the forum selection clause's meaning and scope.  Martinez, 740 F.3d at 218.  However, the "'parties by their acquiescence ... may induce the trial court to assume that foreign law is similar to that of the forum'" so that the Court is permitted to apply general contract law principles and federal precedent to interpret the meaning and scope of the clause.  Id. at 223 (quoting Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 53 (2d Cir. 1984)); see also Phillips, 494 F.3d at 386.  Here, the parties rely exclusively on federal law in their briefs and the Court will therefore apply federal precedent to interpret the clause.  See Phillips, 494 F.3d at 386; Midamines, 2014 WL 1116875, at *3 n. 6.

that the clause was otherwise invalid for reasons such as fraud or overreaching. Id. at 383-84 (citing M/S Breman, 407 U.S. at 15).

## DISCUSSION

Trans Global argues that pursuant to the forum selection clause in the TGL Bills of Lading, any claim against Trans Global must be brought in Hong Kong. Allianz disputes such contention, asserting that the TGL forum selection clause is not enforceable because it was not "reasonably communicated," is not mandatory, and does not apply to its claims against Trans Global. (Pl. Opp. at 2-5.) As it does not meet the first three requirements of the Phillips analysis, Allianz argues, Trans Global's motion must be denied.[4] The Court disagrees.

## A. Whether the Forum Selection Clause was Reasonably Communicated

The first prong of the Phillips inquiry asks whether the forum selection clause was "reasonably communicated" to the party resisting enforcement, namely that the party had "reasonable notice" of the clause. 494 F.3d at 383; Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9 (2d Cir. 1995). Whether notice is reasonable is a question of law for the court. Effron, 67 F.3d at 9 (citing Spataro v. Kloster Cruise, Ltd., 894 F.2d 44, 45-46 (2d. Cir. 1990) (per curiam); Lieb v. Royal Caribbean Cruise Line, Inc., 645 F. Supp. 232, 234 (S.D.N.Y. 1986)).

The TGL Bills of Lading clearly identify Southern Telecom as the consignee on the front side and include the forum selection clause on the reverse side. (Wang Decl. Ex. A.) Allianz does not dispute that the TGL Bills of Lading governed the shipment, or claim that Southern Telecom was unaware of the terms and conditions contained therein. Allianz argues, rather, that being named as a consignee is insufficient to establish reasonable communication because there

---

[4] Allianz does not dispute that Trans Global, which was subcontracted by TGL Container Lines to act as the delivery agent for the cargo, can assert the benefits of the provisions set forth in the TGL Bills of Lading. (Wang Decl. ¶ 6.) The TGL Bills of Lading include a "Himalaya Clause" which provides that the protections and benefits set forth in the agreement apply equally to any subcontractor. (Wang Decl. Ex. A.)

are "genuine questions of fact" regarding the relationship between Southern Telecom and Trans Global and Southern Telecom's negotiation and acceptance of the terms of the TGL Bills of Lading. (Pl. Opp. at 5.)

Allianz's argument is unpersuasive. As the consignee identified in the TGL Bills of Lading, Southern Telecom received "reasonable notice" of the terms contained therein, including the forum selection clause. See Federal Ins. Co. v. MV CMA Bill of Lading, No. 09 Civ. 1409 (GBD), 2010 WL 727217, at *2 (S.D.N.Y. 2010) (finding that consignee had reasonable notice of the forum selection clause printed on the face of the bill of lading). The TGL forum selection clause contains clear, unambiguous language identifying the Hong Kong courts as the exclusive jurisdiction for legal disputes. This language constituted reasonable communication of the provision to Southern Telecom. See Effron, 67 F.3d at 9. Moreover, as discussed in further detail below, Allianz sues Trans Global based, at least in part, on legal duties that Trans Global possessed under the TGL Bills of Lading. Allianz cannot rely on legal duties created by the contract of carriage and simultaneously disclaim notice of the terms of such agreement. See, e.g., Moller-Maersk A/S v. Ocean Express Miami, 550 F. Supp. 2d 454, 464 (S.D.N.Y. 2008) (citing generally accepted rule that cargo owner accepts terms of carrier's bill of lading by suing on it); AIG Mexico Seguros Interamericana, S.A. de C.V. v. M/V ZAPOTECA, 844 F. Supp. 2d 440, 442 (S.D.N.Y. 2012) ("Where a Defendant can be made liable for a breach of any duty under a bill of lading, it is entitled to assert any additional provisions of the same bill that it finds beneficial or provide it a defense to the action.") (citations omitted).

## B. Whether the Forum Selection Clause is Mandatory

Forum selection clauses may be permissive or mandatory. A so-called permissive forum selection clause allows contracting parties to agree on a potential forum so that "at least one forum will be available to hear their dispute." Phillips, 494 F.3d at 386. Such a clause confers

6

jurisdiction on a designated forum, but does not deny Plaintiff a choice of forum. Id. (citing John Boutari & Sons, Wines, and Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51, 53 (2d Cir. 1994)). By contrast, a mandatory forum selection clause "eliminate[s] surprise" by conferring *exclusive* jurisdiction on the designated forum. Id. (citing Roby, 996 F.2d at 1363). The TGL forum selection clause provides that all disputes "arising out of or in connection with" the agreement "shall be referred to the exclusive jurisdiction of the Hong Kong Courts." Allianz argues that the clause is merely permissive and "falls short of mandatory language" because it does not specify a particular court in Hong Kong. (Pl. Opp. at 4.)

Allianz's argument fails for the precise reasons articulated by the Second Circuit in Phillips. Like the TGL forum selection clause, the Phillips provision referred to a particular location but did not specify a particular court. 494 F.3d at 386. The Court nonetheless concluded that the clause was mandatory, explaining that the choice of a particular location combined with the mandatory force of the words "are to be" distinguished it from permissive clauses. Id. at 386-87. Similarly, in the TGL forum selection clause, Hong Kong is unambiguously identified as the exclusive forum and the words "shall be" denote mandatory force. See id.; see also TMC Co. Ltd. v. M/V MOSEL BRIDGE, No. 01 Civ. 9860 (LAK), 2002 WL 1880722, at *1 (S.D.N.Y. Aug. 15, 2002) (distinguishing mandatory "shall be brought" from permissive "may be brought"); Baosteel Am., Inc. v. M/V "OCEAN LORD," 257 F. Supp. 2d 687, 689 (S.D.N.Y. 2003) (holding that clause stating that all disputes arising under bills of lading "shall be settled in the flag-state of the ship" or another place "mutually agreed between the Carrier and the Merchant" was mandatory).

## C. Whether the Forum Selection Clause Applies to Allianz's Claims Against Trans Global

Next, Allianz argues that the forum selection clause does not apply to its claims against TGL because the claims sound in negligence and breach of bailment and do not rely on the

7

contractual terms set forth in TGL's Bills of Lading. (Pl. Opp. at 2-3.) Allianz notes that the Complaint references only Defendant "K" Line's sea waybill, and not the TGL Bills of Lading. (Id.) The appropriate analysis, however, focuses on the substance of the claims alleged and not Plaintiff's "artful pleading." See Phillips, 494 F.3d at 388-89 (citing Roby, 996 F.2d at 1360-61). To determine if the forum selection clause applies to a particular claim, the Court must examine the claims "shorn of their labels." Id. at 389-90. The mandatory forum selection clause will be deemed to apply to Allianz's claims against Trans Global if the Court finds that the claims arise "out of or in connection with" the TGL Bills of Lading. (Wang Decl. Ex. A.)

The Complaint contains two claims against Trans Global. In Count One, Allianz alleges that Trans Global failed to exercise proper care, custody, and control of the cargo by its selection of carrier, coordination and scheduling of pickup and delivery, and management of the cargo. (Compl. ¶ 16.) In Count Two, Allianz alleges that the Defendants agreed to perform services and act as a carrier or bailee of the shipment, and are liable for the breach of that agreement and of their obligations as carriers of goods for hire and/or bailees under applicable contracts or law by the loss of the shipment. (Id. ¶ 24.) Although not labeled as such, the allegations in the Complaint support both tort and contract claims. Under either legal theory, the allegations substantively relate to the duties set forth in the TGL Bills of Lading and are governed by the forum selection clause.

In Phillips, the Second Circuit introduced a "language-specific" approach to interpreting the scope of a forum selection clause. 494 F.3d at 388-90. Interpreting "arise out of" in a forum selection clause as meaning "to originate from," the Court there limited the clause's scope to contract-based claims. Id. at 390-92 (excluding copyright claim). By contrast, the more sweeping language used in the TGL forum selection clause extends to "any dispute arising out of or in connection with" the TGL Bills of Lading. See id. at 389 (contrasting "arise out of" with

8

the broader alternatives "arise in connection with," "relate to," and "associated with"). This language suggests that the TGL forum selection clause encompasses *more* than a contract claim originating from the TGL Bills of Lading; it also encompasses non-contract claims that arise "in connection with" the agreement. See John Wyeth & Bro. Ltd. v. Cigna Int'l Corp., 119 F.3d 1070, 1074-75 (2d Cir. 1997) (construing "any dispute . . . arising in relation to" in forum selection clause as encompassing any dispute related to that agreement).

Allianz alleges that Trans Global failed to exercise proper care and control of the cargo and that it violated its agreement to act as a carrier or bailee for the shipment. Although the Complaint does not reference the TGL Bills of Lading, these allegations are based on duties Trans Global necessarily had under, or in connection with, that agreement. See Fubon Ins. Co. Ltd. v. OHL Int'l, No. 12 Civ. 5035 (RJS), 2014 WL 1383604, at *7 (S.D.N.Y. Mar. 31, 2014). (concluding that forum selection clause applying to "[a]ll disputes arising under or in connection with" the bill of lading governed negligence claim based on duty owed by carrier). Allianz does not cite to any additional contract or source of legal duty as a basis for its claims against TGL. The Court thus concludes that the claims asserted against Trans Global in Counts One and Two are governed by the mandatory forum selection clause.

**D. Enforcement of the Forum Selection Clause**

As the first three prongs of the forum selection analysis have been satisfied, the forum selection clause in the TGL Bills of Lading is presumptively enforceable. Martinez, 740 F.3d at 227 (citing Phillips, 494 F.3d at 383). Allianz may therefore defeat dismissal only if it overcomes that presumption by establishing that enforcing the forum selection clause "would be unreasonable or unjust." Id. (citing Phillips, 494 F.3d at 384). A forum selection clause is enforceable unless "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong

9

public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the Plaintiff effectively will be denied of his day in court." Phillips, 494 F.3d at 392 (citing Roby, 996 F.2d at 1363).

Allianz has made not made any showing—nor even argued—that the forum selection clause should be set aside because its enforcement would be unreasonable or unjust.[5] Accordingly, this action against Trans Global must be adjudicated in the courts of Hong Kong.

## CONCLUSION

For the foregoing reasons, the TGL forum selection clause is enforceable against Allianz and Trans Global's motion to dismiss the Complaint (Dkt. 29) is GRANTED.  The Clerk of the Court is respectfully directed to close item 29 on the docket and dismiss the action against Trans Global.

SO ORDERED.

Dated:     September 19, 2014
           New York, New York

                                         _____
                                         Ronnie Abrams
                                         United States District Judge

---

[5] After Atlantic Marine, some district court decisions have analyzed public interest considerations separately after performing the four part enforceability analysis under Phillips.  See, e.g. Midamines, 2014 WL 1116875, at *3; Fubon, 2014 WL 1383604, at *6.  In Martinez, the Second Circuit addressed those factors in connection with its analysis of whether enforcing the forum selection clause would be unreasonable or unjust.  740 F.3d at 227-30.  In any event, Allianz does not raise any public interest arguments against enforcement under Atlantic Marine or the final prong of Phillips.