USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: NOV 17 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALLIANZ GLOBAL CORPORATE & SPECIALTY, as subrogee and assignee of SOUTHERN TELECOM, INC.,

Plaintiff,

-against-

"CHISWICK BRIDGE," her engines, tackle, boilers, etc., *in rem*; KAWASAKI KISEN KAISHA CO., LTD.; "K" LINE AMERICA, INC.; PORT NEWARK CONTAINER TERMINAL; PORTS AMERICA; TRANS GLOBAL LOGISTICS; HUA FENG (USA) LOGISTICS INC.,

Defendants.

---

ALLIANZ GLOBAL CORPORATE & SPECIALTY, as subrogee and assignee of ROBERT BOSCH LLC,

Plaintiff,

-against-

MSC "ASLI," her engines, tackle, boilers, etc., *in rem*; MEDITERRANEAN SHIPPING COMPANY (USA), INC.; MSC MEDITERRANEAN SHIPPING COMPANY, S.A.; "CHISWICK BRIDGE," her engines, tackle, boilers, etc., *in rem*; KAWASAKI KISEN KAISHA CO., LTD.; "K" LINE AMERICA, INC.; PORT NEWARK CONTAINER TERMINAL; PORTS AMERICA,

Defendants.

---

No. 13-cv-7559-RA
No. 13-cv-7565-RA

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Allianz Global Corporate & Specialty ("Allianz") brings these cases as the subrogee and assignee of Southern Telecom, Inc. and Robert Bosch LLC, seeking recovery for certain cargo shipped from China to New Jersey and allegedly damaged by flooding from Hurricane Sandy. Before the Court is a motion to dismiss by Defendants Kawasaki Kisen Kaisha Co. Ltd. and "K" Line America, Inc. ("'K' Line") on the basis of an exclusive forum selection clause in the bills of lading that "K" Line issued for the insured shipments.[1] For the reasons stated below, the motion to dismiss is granted.

## BACKGROUND[2]

Allianz's claims against "K" Line arise out of two shipments, one of electronic accessories and one of security systems, shipped together from China on the Defendant vessel "CHISWICK BRIDGE" and discharged in New Jersey on or about October 27, 2012—two days before Hurricane Sandy struck New Jersey. (Compl. 1 ¶ 11; Compl. 2 ¶ 10.)

Allianz alleges that the shipments were damaged by "wetness" from the hurricane as a result of Defendants' negligence. (Compl. 1 ¶ 13; Compl. 2 ¶ 15.) "K" Line is sued for discharging the cargo from the "CHISWICK BRIDGE" two days before the hurricane. (Compl. 1 ¶ 14; Compl. 2 ¶ 16.) Defendants, Allianz claims, knew or should have known about the "well predicted and highly publicized impact" of the hurricane, including expected storm surges, rising

---

[1] These cases are two of fifteen cases consolidated for all purposes under docket 13-cv-7004. "K" Line filed its motion in 13-cv-7559 and 13-cv-7565, but relies on the same motion papers in each case.

[2] The facts are taken from the two Complaints Allianz filed against "K" Line. The Complaint filed in 13-cv-7559 is referred to herein as "Compl. 1," and the Complaint filed in 13-cv-7565 is referred to as "Compl. 2." Compl. 1 pertains to a shipment for Allianz's insured Southern Telecom that originated in Yantian, China and was discharged in New Jersey. (Compl. 1 ¶ 10.) Compl. 2 concerns a shipment for Allianz's insured Robert Bosch LLC that departed from Hong Kong and was also discharged in New Jersey. (Compl. 2 ¶¶ 2, 12.) The allegations against "K" Line in both Complaints are virtually identical.

water levels, heavy wind, and rain. (Compl. 1 ¶¶ 14, 17; Compl. 2 ¶¶ 16, 18.) In addition, because Defendants allegedly agreed to perform services and act as a carrier or bailee of the shipments, Allianz seeks to hold them liable for the breach of that agreement and of their obligations as carriers of goods for hire and/or bailees "under applicable contracts or law." (Compl. 1 ¶ 24; Compl. 2 ¶ 25.)

"K" Line issued waybills for the shipments, both of which incorporated the terms and conditions of "K" Line's standard Combined Transport Bill of Lading ("Combined Bill of Lading"). (Compl. 1 ¶ 10; Compl. 2 ¶ 12; Johnson Declaration (Johnson Decl.) ¶¶ 5-7.) The terms and conditions of the Combined Bill of Lading contain a "Governing Law and Jurisdiction" clause which provides:

> The contract evidenced by or contained in this Bill of Lading shall be governed by Japanese law except as may be otherwise provided for herein, and any action thereunder or in connection with Carriage of Goods shall be brought before the Tokyo District Court in Japan, to whose jurisdiction Merchant irrevocably consents.

(Johnson Decl. Ex. C.)

On October 25, 2013, Allianz filed the 13-cv-7559 and 13-cv-7565 Complaints in the Southern District of New York. "K" Line answered both Complaints on December 2, 2013, and asserted an affirmative defense based on the forum selection clause in the Combined Bill of Lading. (13-cv-7559 Dkt. 4; 13-cv-7565 Dkt. 4.) On April 1, 2014, "K" Line moved to dismiss the Complaints, arguing that the forum selection clause mandates that any claim against "K" Line be brought in Tokyo. (13-cv-7559 Dkt. 42; 13-cv-7565 Dkt. 39.)

## LEGAL STANDARD

"K" Line filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c). Until last year, it was unclear what the proper procedural mechanism was for filing a motion to enforce

a forum selection clause. The Supreme Court resolved this uncertainty in Atlantic Marine Constr. Co. v. United States District Court for the Western District of Texas, holding that a party seeking to enforce a forum selection clause designating a foreign forum should do so by way of a motion to dismiss for *forum non conveniens*. 134 S. Ct. 568, 580 (2013). Although the decision left open the question of whether such a motion may alternatively be brought under Rule 12(b)(6), 134 S. Ct. at 580, the Court will construe "K" Line's motion under the *forum non conveniens* principles articulated in Atlantic Marine.[3] In deciding the motion, the Court may rely on the pleadings and affidavits submitted in connection with the motion, but cannot resolve any disputed material fact in the movant's favor unless an evidentiary hearing is held. Martinez v. Bloomberg LP, 740 F.3d 211, 216-17 (2d Cir. 2014); see also Midamines SPRL Ltd. v. KBC Bank NV, No. 12 Civ. 8089 (RJS), 2014 WL 1116875, at *2, n.5 (S.D.N.Y. Mar. 18, 2014).

The enforceability of the forum selection clause is governed by federal law. Martinez, 740 F.3d at 217; Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590 (1991). Under the doctrine of *forum non conveniens*, a valid forum selection clause must be given "controlling weight in all but the most exceptional cases." Atlantic Marine, 134 S. Ct. at 581. In the admiralty context, forum selection clauses "are prima facie valid and should be enforced" unless the resisting party meets the "heavy burden" of showing that enforcement would be unreasonable under the circumstances. M/S Breman v. Zapata Off-Shore Co., 407 U.S. 1, 10, 17 (1972).

Courts in this Circuit employ a four-part analysis to determine the validity of a forum selection clause. Phillips v. Audio Active, Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007). First, the Court must determine: (1) whether the clause was "reasonably communicated" to the party

---

[3] While reserving decision on whether Rule 12(b)(6) provides a procedural alternative, the Supreme Court cautioned defendants that the rule may require a trial on venue when there are disputed issues of fact regarding the validity of the forum selection clause. See Atlantic Marine, 134 S. Ct.at 580 n.4. That concern does not apply in this case because, as discussed further below, the parties do not dispute any factual issues regarding the validity of the clause.

4

resisting enforcement, (2) whether the clause is mandatory or permissive, and (3) whether the claims and parties involved in the suit are subject to the clause. Id. at 383. If these three requirements are met, the forum selection clause is presumptively enforceable. Id. (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1362-63 (2d Cir. 1993)). The final step of the analysis is for the Court to ascertain whether the resisting party has rebutted the presumption of enforceability by showing that enforcement of the forum selection clause would be unreasonable or unjust, or that the clause is otherwise invalid for reasons such as fraud or overreaching. Id. at 383-84 (citing M/S Breman, 407 U.S. at 15).

## DISCUSSION

Allianz does not dispute that the forum selection clause in "K" Line's Combined Bill of Lading was reasonably communicated, is mandatory, and applies to its claims against "K Line." (Plaintiff's Opposition to "K" Line's Motion to Dismiss ("Pl. Opp.") at 2.) The forum selection clause therefore satisfies the first three prongs of the Phillips analysis and is presumptively enforceable. Martinez, 740 F.3d at 227 (citing Phillips, 494 F.3d at 383). At the final stage of the Phillips inquiry, the party challenging enforcement may overcome the presumption of enforceability only by establishing that enforcing the forum selection clause "would be unreasonable or unjust." Id. (citing Phillips, 494 F.3d at 384). A forum selection clause will thus be enforced unless "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the Plaintiff effectively will be denied of his day in court." Id. at 228 (citing Phillips, 494 F.3d at 392).[4]

---

[4] After Atlantic Marine, some district court decisions have analyzed public interest considerations separately after performing the four part enforceability analysis under Phillips. See, e.g., Midamines, 2014 WL 1116875, at *3;

Allianz argues that the Court should decline to enforce the forum selection clause because enforcement would be "unreasonable and unfair." (Pl. Opp. at 3.) Splitting its litigation efforts between New York and Tokyo, Allianz claims, would be "unduly costly and prejudicial" to its interests because its claims against the various Defendants are "closely intertwined" and rely on similar facts and legal theories. (Pl. Opp. at 3-4.) These circumstances, however, do not rise to the level of those contemplated by Phillips—*i.e.* that trial in the selected forum would be "so difficult and inconvenient" that Allianz would "effectively be denied its day in court." 494 F.3d at 392 (citing Roby, 996 F.2d at 1363). To the contrary, Allianz's argument is of the sort expressly rejected in Atlantic Marine. 134 S. Ct. at 582 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). Beyond inconvenience, Allianz has made no showing that it would be unable to adequately assert its claims against "K" Line in the Tokyo forum, or that it would not receive a fair hearing there. See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 10 (2d. Cir 1995).

In arguing that enforcing the forum selection clause would be unjust in this case, Allianz relies on In re Rationis Enterprises, No. 97 Civ. 9052 (RO), 1999 WL 6364, at *3 (S.D.N.Y. Jan. 7, 1999). (Pl. Opp. at 3.) That case is easily distinguished from the facts here. The Rationis Court declined to enforce a forum selection clause because of the "unusual size and complexity" of the proceeding under the Limitation of Liability Act and because it found that the defendant waived the forum selection defense. 1999 WL 6364, at *2-3. By contrast, the instant case was not filed as a limitation proceeding, nor does Allianz assert that "K" Line waived its forum

---

Fubon, 2014 WL 1383604, at *6. In Martinez, the Second Circuit addressed those factors in connection with its analysis of whether enforcing the forum selection clause would be unreasonable or unjust. 740 F.3d at 227-30. This Court follows the approach taken in Martinez and discusses public interest factors within the context of the final Phillips prong.

selection defense. Moreover, Rationis was decided before the Supreme Court and the Second Circuit further clarified the deference owed to forum selection clauses in Atlantic Marine, Martinez, and Phillips. See, e.g., Atlantic Marine, 134 S. Ct. at 583 ("In all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their [contractual] bargain.").

The remaining factors relevant to whether enforcement would be "unreasonable or unjust" similarly weigh in favor of enforcing the forum selection clause. Allianz does not assert that "K" Line's forum selection clause was the result of fraud or overreaching, or that the law of the Japanese forum is fundamentally unfair. Finally, the public policy interests of the plaintiff's chosen forum actually militate in favor of enforcement. The Supreme Court and the Second Circuit have repeatedly expressed a commitment to respecting "contracting parties' legitimate expectations" where they do not conflict with another important federal policy. See Martinez, 740 F.3d at 218 (citing example of forum selection clause which would frustrate enforcement of civil rights laws). See also Atlantic Marine, 134 S. Ct. at 583; Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp., 561 U.S. 89, 109-10 (2010) (upholding "K" Line's forum selection clause). No such competing policy has been identified by Allianz to justify setting aside the forum selection clause in this case.

In sum, Allianz has failed to show that enforcing the forum selection clause would be "unreasonable or unjust." Accordingly, Allianz's claims against "K" Line must be adjudicated in the Tokyo District Court.

## CONCLUSION

For the foregoing reasons, "K" Line's motion to dismiss (13-cv-7559 Dkt. 42; 13-cv-7565 Dkt. 39) is GRANTED. The Clerk of the Court is respectfully directed to close item 42 on

docket 13-cv-7559 and item 30 on docket 13-cv-7565, and to dismiss those actions against "K" Line.

SO ORDERED.

Dated:	November 17, 2014
	New York, New York

_____
Ronnie Abrams
United States District Judge